# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KEEGAN WILLIAM KANGAS,

Defendant-Appellant.

UNPUBLISHED
May 24, 2016

No. 326322
Chippewa Circuit Court
LC No. 14-001432-FH

Before: GLEICHER, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right from his conviction following a jury trial of stealing or retaining another's financial transaction device without consent, MCL 750.157n, possessing another's financial transaction device with intent to use, deliver, circulate, or sell it, MCL 750.157p, and use of a financial device illegally obtained or retained, MCL 750.157q. He was sentenced to 365 days in jail for each count, to be served concurrently, with credit for 258 days on each count. We affirm.

The instant charges were brought against defendant while he was awaiting trial on two counts of third-degree criminal sexual conduct.[1] They arose from allegations that defendant stole, retained, used, and sold fellow inmate Eric Baldwin's prisoner number and personal identification number (PIN). Evidence was presented that each prisoner is given a PIN number that links to his commissary account and enables him to pay for phone calls and consumer goods. To make a telephone call, a prisoner must key in his prisoner number, which identifies the caller, and his PIN, which charges the prisoner's commissary account for the call. The prisoners know that the telephone system logs and records each call, and prison officials have access to information telling them who made a call, and when and from which telephone the call was made. At issue are several telephone calls made on April 22, 2014.

Baldwin testified that while sharing a cell with defendant, defendant kept saying he wanted to call his girlfriend but did not have any money in his commissary account. Eventually,

---

[1] *People v Kangas*, unpublished opinion per curiam of the Court of Appeals, issued December 8, 2015 (Docket No. 323088).

Baldwin used his own prisoner number and PIN to allow defendant to make the call. Baldwin testified that he did not cover the telephone in an effort to hide his numbers when entering them. About two hours later, Baldwin was moved to another cell.

David Hall, at the time a Department of Corrections shift supervisor at the facility where defendant was housed, was monitoring the prison's phone system on another matter when he noticed that Baldwin was making a telephone call from a cell on the opposite side of the facility from where he was housed. Hall discovered that another inmate, Donald Alexander, was actually making the call. When confronted, Alexander told Hall that he had traded defendant telephone calls for art and food trays. Alexander testified that he did not have any money in his account to call his wife, so he traded with defendant for three calls, and that each time defendant keyed in what Alexander thought was defendant's own prisoner number and PIN.

Hall searched defendant's pockets, and found three slips of paper, one of which contained Baldwin's prisoner number and PIN. With the aid of printed telephone records, Hall explained to the jury that several calls had been made with Baldwin's number. He said that when he listened to the calls, he determined the callers to be defendant, Alexander, and another inmate, Christopher Tadgerson, all of which was confirmed by video of the cell from where the calls originated. Baldwin denied knowing Alexander or Tadgerson, and steadfastly maintained that he suspected no one other than defendant of obtaining access to his commissary account.

Defendant claims on appeal that the evidence was insufficient to allow a rational trier of fact to find that plaintiff had proved the charges against him beyond a reasonable doubt. When reviewing a trial court's decision on a motion for a directed verdict, we review the record de novo to determine whether the evidence presented by the prosecutor up to the time of the motion, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

Defendant was convicted of violating MCL 750.157n(1), MCL 750.157p, and MCL 750.157q.

MCL 750.157n(1) provides as follows:

> A person who steals, knowingly takes, or knowingly removes a financial transaction device from the person or possession of a deviceholder, or who knowingly retains, knowingly possesses, knowingly secretes, or knowingly uses a financial transaction device without the consent of the deviceholder, is guilty of a felony.

A "financial transaction device" includes any "code, account number, personal identification number, or a record or copy of a code, account number, or personal identification number or other means of access to a credit account or deposit account" that can be used to obtain "goods, services, or anything of value." MCL 750.157m(f)(*v*). A "deviceholder" includes a person "to whom a financial transaction device was issued and who used or accepted a financial transaction device . . . ." MCL 750.157m(d)(*ii*). In this case, Baldwin is the "deviceholder" and the financial transaction device is his prisoner number and PIN. Thus,

conviction for violating MCL 750.157n(1) requires proof beyond a reasonable doubt that defendant knowingly obtained possession of, retained, hid, or used Baldwin's prisoner number and PIN without Baldwin's consent, and that he did so intending to defraud or cheat Baldwin. M Crim JI 30.03.

MCL 750.157p provides as follows:

A person who has in his or her possession, or under his or her control, or who receives from another person a financial transaction device with the intent to use, deliver, circulate, or sell the financial transaction device, or to permit, cause, or procure the financial transaction device to be used, delivered, circulated, or sold, knowing the possession, control, receipt, use, delivery, circulation, or sale to be without the consent of the deviceholder, is guilty of a felony.

Thus, to convict defendant of violating MCL 750.157p, plaintiff had to prove beyond a reasonable doubt that defendant knowingly possessed or had in his control Baldwin's prisoner number and PIN without Baldwin's consent, that defendant intended to use, deliver, circulate, or sell the numbers, and that he did use, deliver, circulate, or sell them with the intent to defraud or cheat Baldwin. M Crim JI 30.5.

MCL 750.157q provides as follows:

A person who delivers, circulates, or sells a financial transaction device which was obtained or held by that person under circumstances proscribed under section 157n, 157p, or 157v, or uses, permits, causes, or procures the financial transaction device to be used, delivered, circulated, or sold, knowing the device to have been obtained or held under circumstances proscribed under section 157n, 157p, or 157v is guilty of a felony. [Footnote omitted.]

The trial court delivered the standard jury instruction for § 157q, which defines "deviceholder" as "a person [or organization] who asks for and is issued *[name specific financial transaction device]*, or "who uses or accepts a *(name device)*, whether or not the *(name device)* was asked for. M Crim JI 30.1; see MCL 750.157m(d).

Viewed in the light most favorable to the prosecution, *Ericksen*, 288 Mich App at 196, the evidence presented at trial was sufficient to prove beyond a reasonable doubt that defendant violated each of these statutes. It is uncontroverted that defendant possessed a scrap of paper containing Baldwin's prisoner number and PIN, that defendant used these numbers to make a telephone call when Baldwin was not present, and that he sold the use of the numbers to Alexander in exchange for art and food. Defendant urges us to consider the credibility of the witnesses when analyzing this issue. However, this Court will not interfere with the jury's role in weighing the credibility of witnesses. *Kanaan*, 278 Mich App at 619. The dispositive issue is whether Baldwin gave the numbers to defendant, or defendant stole them (or knowingly retained them without Baldwin's consent) and used them without Baldwin's consent.

A rational trier of fact could conclude from the evidence presented at trial that defendant stole or knowingly retained the numbers without Baldwin's consent, that he possessed them with

the intent to use them without Baldwin's consent, and that, having obtained them unlawfully, he then sold them without Baldwin's consent. Baldwin testified that he was surprised to find money missing from his commissary account, and that the only person who could have learned his identification numbers was defendant. Baldwin testified that when he used his prisoner number and PIN to allow defendant to call his girlfriend, he turned his back and punched in his numbers as quickly as possible, but he did not cover the keypad with his hand. Baldwin opined that defendant could have looked around him or over his shoulder and memorized his identification numbers. Baldwin testified that he did not authorize defendant, or anyone else, to use his identification numbers or to link to his commissary account.

A rational trier of fact could conclude from this evidence that defendant took the opportunity presented by the close conditions of the small holding cell to steal Baldwin's numbers or to retain them without Baldwin's consent and for the purpose of defrauding Baldwin, thus violating MCL 750.157n(1). A rational trier of fact could also conclude from the evidence that defendant had the numbers on his person and used them to make a call when Baldwin was not present, and that defendant possessed the numbers with the intent to use them without Baldwin's consent and for the purpose of defrauding Baldwin, thus violating MCL 750.157p. Finally, a rational trier of fact could conclude that Baldwin sold the numbers to Alexander, thus establishing that defendant violated MCL 750.157q.

Because the evidence was sufficient to allow a rational trier of fact to conclude that the prosecution proved every element of the charged crimes beyond a reasonable doubt, *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970), defendant's claim that he was denied due process of law under federal and state constitutions, US Const, Am VI, XIV, Const 1963, art 1, § 17, must fail.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Michael J. Kelly

-4-